UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAQUAVIS D. MARTIN,

      Petitioner,

v.

SHERMAN CAMPBELL,

      Respondent.

_____/

CASE NO. 2-18-CV-13964
HONORABLE LINDA V. PARKER

## <u>OPINION AND ORDER DENYING THE HABEAS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL</u>

### I.      Introduction

Michigan prisoner Daquavis D. Martin ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   He was convicted of first-degree premeditated murder in the Saginaw County Circuit Court and was sentenced, as a second habitual offender, to life imprisonment without the possibility of parole in 2013.   In his habeas petition, as amended/supplemented, he raises claims concerning the sufficiency of the evidence, the conduct of the prosecutor, the effectiveness of trial counsel, the pre-trial identification procedure, and the trial court's denial of discovery requests.   Respondent has filed an answer to the

amended habeas petition contending that it should be denied. For the reasons set forth, the Court denies with prejudice the habeas petition, denies a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## II. Facts and Procedural History

Petitioner's conviction arises from his participation with three accomplices, Demarkus Bowes, William White, and Elmer Curry, in the beating death of Gregory Gross in Saginaw, Michigan, during the early morning hours on February 26, 2013. The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant and three accomplices brutally beat a 52–year–old man to death. The assault took place at night in the yard of an individual who was alerted to the attack after hearing some commotion and loud voices near his living room window. He stepped outside onto the porch and witnessed the ongoing assault on the sidewalk in front of his home. We shall hereafter refer to this individual as "the eyewitness." The eyewitness testified, "As soon as I stepped on the porch, four were hitting and kicking [the victim]. Yeah, all four were hitting and kicking[.]" The eyewitness identified defendant as one of the perpetrators of the assault from a photographic lineup and at trial. According to the eyewitness, the four assailants ignored his presence on the porch for about 15 to 20 seconds, while continuing to mercilessly strike and kick the defenseless victim. When the eyewitness thereafter spoke up and demanded to know what was going on, two of the assailants backed away, but the other two, including defendant, continued the assault, with, among other blows, defendant kicking the

victim in the torso and the other assailant striking the victim with a candy cane Christmas decoration. The eyewitness further testified:

Q. When you ... stepped on ... your front porch, the victim was lying on the cement leading to your home, is that correct?

A. Correct.

Q. Was that person making any defensive moves whatsoever?

A. At the time I stepped on the porch it appeared he was unconscious so he was—he wasn't able to defend himself at that time. He wasn't moving his arms or anything....

Q. And this was what you've estimated 15 to 20 seconds that you watched prior to saying something?

A. That's correct.

Q. And even after you said something, the two ... individuals, the defendant and another ..., continued to beat him?

A. That's correct.

The eyewitness also testified that defendant blurted out that he was robbing the victim, and the eyewitness explained that he observed defendant rifling through the victim's clothes.

The forensic pathologist who performed the autopsy described the following injuries suffered by the victim: numerous bruises and lacerations on the victim's face and head ("he had bruises from front to back all around the head"); broken teeth; a sunken eye socket; multiple fractures of the mandible; bruises, lacerations, and abrasions about the torso; four broken ribs; internal bleeding in the chest cavity; extensive bleeding throughout the brain; and blood clots in the brain's ventricles ("When there is blood in these ventricles it is considered a very serious

injury because energy has to go through—not only through the skull but through the brain to cause the bleeding inside of the cavity we call ventricles"). The pathologist opined that a significant amount of force was employed to cause the victim's injuries and that the cause of death was "[b]lunt force head trauma." The jury was shown autopsy photographs that were referred to during the pathologist's testimony.

One of defendant's accomplices, [DeMarkus Bowes], who pled guilty to second-degree murder, testified about his and defendant's presence at the crime scene and that he was "pretty sure" that his "peoples played a part" in the attack, although he was not exactly sure "who all." The accomplice testified that no one in the group stood back and asked the assailants to stop the attack. Defendant testified that he was at the crime scene but denied being involved in the beating. He claimed that he tried to break up the attack, telling the others to stop.

*People v. Martin*, No. 319154, 2015 WL 774488, *1-2 (Mich. Ct. App. Feb. 24, 2015).

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the sufficiency of the evidence, the trial court's evidentiary rulings and jury instructions, the conduct of the prosecutor, the effectiveness of trial counsel, and the pre-trial identification procedure. The court denied relief on those claims and affirmed his conviction and sentence. *Id*. at *2-7. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Martin*, 498 Mich. 885, 869 N.W.2d 592 (2015).

4

Petitioner then filed a motion for relief from judgment with the state trial court raising claims concerning newly-discovered evidence and the effectiveness of trial counsel.   The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3) and on the merits.   *People v. Martin*, No. 13-038567-FC (Saginaw Co. Cir. Ct. Oct. 26, 2017); ECF No. 11-19.   Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to establish that the trial court erred in denying the motion for relief from judgment. *People v. Martin*, No. 341357 (Mich. Ct. App. Apr. 27, 2018); ECF No. 11-16, PageID.593.   Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D).   *People v. Martin*, 503 Mich. 913, 919 N.W.2d 789 (2018).

Petitioner thereafter filed his initial federal habeas petition, and a supplemental petition, raising claims concerning the sufficiency of the evidence, the conduct of the prosecutor, the effectiveness of trial counsel, and the pre-trial identification procedures.   ECF Nos. 1, 8.   Respondent filed an answer to that petition contending that it should be denied because several claims are procedurally defaulted, one claim is untimely, and all of the claims lack merit.   ECF No. 10.

Petitioner subsequently moved to stay the proceedings so that he could return to the state courts to exhaust additional claims. ECF No. 13. The Court granted that motion, staying the proceedings, and administratively closed the case. ECF No. 14.

Petitioner then returned to the state courts and filed a post-conviction motion for discovery in the state trial court seeking audio and/or video from the prosecutor and the police, as well as any exculpatory materials or evidence known to the prosecution. The trial court denied the motion based upon Michigan Court Rule 6.201. *People v. Martin*, No. 13-038567-FC-5 (Saginaw Co. Cir. Ct. Mar. 24, 2021); ECF No. 22-3. The court also denied reconsideration. ECF No. 22-4. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for lack of merit. *People v. Martin*, No. 357630 (Mich. Ct. App. Oct. 8, 2021); ECF No. 22-5, PageID.1209. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied, *People v. Martin*, 509 Mich. 976, 973 N.W.2d 139 (2022), as was his motion for reconsideration. *People v. Martin*, 510 Mich. 869, 977 N.W.2d 534 (2022).

Petitioner thereafter moved to reopen this case and add his discovery claim. ECF No. 16. The Court granted that motion and reopened the case. ECF No. 18.

6

Respondent then filed a supplemental answer to the habeas petition contending that the new claim is not cognizable and that it lacks merit. ECF No. 21.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions and sentences. The AEDPA provides in relevant part: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

7

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. To find a state court's application of Supreme Court precedent 'unreasonable,' the state court's decision "must have been more than incorrect or erroneous. The state court's application must have been "objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-521 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."   *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).   Pursuant to § 2254(d), a habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.   *Id*.

Thus, to obtain federal habeas relief, a state prisoner must show that the state court's denial of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-420 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).   A petitioner cannot prevail so long

as it is within the "realm of possibility" that fairminded jurists could find the state court decision reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to determining whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases; indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are determined solely by Supreme Court precedent. Circuit precedent "does not constitute 'clearly established federal law as determined by the Supreme Court'" and cannot provide a basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). Lower federal court

10

decisions, however, may be useful in assessing the reasonableness of a state court's ruling. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Analysis

### A. Procedural Default & Timeliness

As an initial matter, Respondent contends that several of Petitioner's habeas claims are procedurally defaulted and one of his claims is untimely. The Court declines to address these procedural defenses. They are not a jurisdictional bar to a review of the merits. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default); *Smith v. State of Ohio Dept. of Rehab.*, 463 F.3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the

11

petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Such is the case here. The procedural issues are complex and intertwined with the substantive claims, particularly the ineffectiveness assistance of counsel claims, such that the substantive claims are more readily decided on the merits. Accordingly, the Court shall proceed to the merits of Petitioner's habeas claims.

### B. Merits

#### 1. Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his first-degree premeditated murder conviction. In particular, he seems to allege that the prosecution failed to present sufficient evidence of his intent to kill as well as premeditation and deliberation. Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).   The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979) (internal citation and footnote omitted).   The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, and through the framework of 28 U.S.C. § 2254(d).   *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).   Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review, the factfinder at trial, and the state court on appellate review, as long as those determinations are reasonable.   *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Additionally, "it is the responsibility of the jury, not the court, to decide that conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).   A federal habeas court may not re-weigh

13

the evidence or re-determine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Rather, a federal habeas court must defer to the factfinder at trial for its assessment of the credibility of witnesses. *Id.*

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *People v. Taylor*, 275 Mich. App. 177, 179, 737 N.W.2d 790 (2007); *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998); Mich. Comp. Laws § 750.316. The intent to kill may be inferred from any facts in evidence. *People v. Unger*, 278 Mich. App. 210, 223, 749 N.W2.d 272 (2008). The intent to kill may be gleaned from the nature of the defendant's acts that constituted the assault, the temper or disposition of mind with which the acts were apparently performed, whether the means used would naturally produce death, any declarations by the defendant, and all other circumstances calculated to shed light upon the intention with which the assault was made. *People v. Brown*, 267 Mich. App. 141, 149 n. 5; 703 N.W.2d 230 (2005).

Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3)

14

the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992); *see also People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736 (1999); *Cyars v. Hofbauer*, 383 F.3d 485, 491 (6th Cir. 2004). While there is no minimum time required to show premeditation, the time between initial thought and ultimate action should be long enough for a reasonable person to take a "second look" at the situation. *Abraham*, 234 Mich. App. at 656; *see also Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003).

As with any crime, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-403, 614 N.W.2d 78 (2000).

To convict a defendant under an aiding and abetting theory, a prosecutor must

15

prove that: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement.  *People v. Carines*, 460 Mich. 750, 757-758, 597 N.W.2d 130 (1999); *see also People v. Moore*, 470 Mich. 56, 679 N.W.2d 41 (2004); Mich. Comp. Laws § 767.39.   An aider and abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime.  *Carines*, 460 Mich. at 757-58.

Petitioner raised this claim on direct appeal.   Applying the foregoing principles, the Michigan Court of Appeals denied relief.   The court explained in relevant part:

> Here, the jury could reasonably have inferred from the evidence that defendant had the requisite intent to kill on the basis of: the length of time that the assailants beat and kicked the victim; the multiple blows directly to the victim's head; the veracity and intensity of the strikes; defendant's clear knowledge upon observation that the victim was directly absorbing the strikes to his body and head absent the ability to stop them; the evidence that the beating continued even though the victim appeared unconscious and was entirely motionless; and the extensive and severe nature of the injuries suffered by the victim as described by the pathologist. Defendant's argument that there was no

16

evidence of him making a declaration indicating or suggesting an intent to kill did not preclude the conviction, given that all of the circumstances surrounding the killing had to also be taken into consideration by the jury. *Unger*, 278 Mich App at 223; *Brown*, 267 Mich App at 149 n 5. Also, the lack of a motive to kill did not necessarily mean that defendant lacked the intent to kill. Finally, in regard to defendant's argument that there was no evidence that he struck the victim in the head causing his death, the argument fails to appreciate that defendant was also tried as an aider and abettor.

\*\*\*

There was sufficient evidence to show that defendant aided and abetted in the assault of the victim, that he intended to do so, and that the natural and probable consequence of the assault, considering its extent and severity, was the death of the victim, resulting in the charged offense of first-degree murder. Moreover, the underlying basis for this argument, i.e., that defendant did not strike the victim in the head, is questionable, considering the eyewitness's testimony about all four men repeatedly beating and kicking the victim and the mountain of bruises that enveloped the victim's head. The eyewitness's testimony about defendant kicking the victim in the torso was in reference to defendant's actions after the eyewitness called out to the assailants, not before. Reversal is unwarranted.

\*\*\*

With respect to premeditation and deliberation …

Here, the jury could reasonably have inferred from the evidence that the killing was premeditated and deliberate on the basis of: the fact that the assailants had to take the time to park their vehicle and approach the victim before engaging in the assault; the length of time that the assailants beat and kicked the victim; the evidence that the assault continued even after the eyewitness spoke up and despite the fact that the victim was essentially unconscious and motionless; the evidence that none of the perpetrators sought to stop the assault after it was initiated; and the extensive nature of the injuries suffered by the victim, which clearly took some amount of time to inflict before the beating finally stopped. Defendant and his accomplices had an opportunity to

17

take a second look and reconsider their actions. There was sufficient evidence of premeditation and deliberation, and reversal is unwarranted.

We also note that, in the context of defendant's sufficiency arguments, he contends that because the eyewitness's testimony was allegedly inconsistent, it was rendered completely incredible and unreliable. This is merely an attack on the credibility of the eyewitness. As indicated above, we will not interfere with the jury's role of assessing the credibility of witnesses. *People v. Wolfe*, 440 Mich. 508, 514–515; 489 NW2d 748 (1992). Furthermore, the alleged inconsistencies or problematic aspects of the eyewitness's testimony were insignificant when viewed in the context of his overall testimony, which was strong and consistent on the facts most relevant to the crime.

*Martin*, 2015 WL 774488, at *2-4 (text and footnotes omitted).

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented sufficient evidence to support Petitioner's conviction either as a principal or as an aider and abettor. The accomplice testimony of Demarkus Bowes identifying Petitioner as an assailant and describing the beating, 10/9/13 Trial Tr., ECF No. 11-8, PageID.283-291, 295-301, the eyewitness testimony of Mikell Huff recounting the nature, brutality, and length of the beating, 10/8/13 Trial Tr., ECF No. 11-7, PageID.234-251, and the medical examiner's testimony describing the nature, location, and severity of the victim's injuries, 10/9/13 Trial Tr., ECF No. 11-8, PageID.292-295, along with reasonable inferences from that testimony,

18

established that Petitioner participated in the beating, that he had time to consider his actions, that he possessed the requisite intent to kill, and that he acted with premeditation and deliberation so as to support his first-degree murder conviction.

Petitioner challenges the jury's evaluation of the testimony and evidence presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-970 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

### 2. Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by referencing gang/rapper signs and underage drinking in opening statements and asking him about gang signs, vouching for Huff's credibility (asking the jury why he would lie), asking Petitioner to comment on Huff's

19

credibility, misstating the law on the presumption of innocence and accomplice testimony, and the cumulative effect of such errors.   Respondent contends that these claims are procedurally defaulted and that they lack merit.

The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."   *Berger v. United States*, 295 U.S. 78, 88 (1935).   To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).   The standard "is a very general one, leaving courts more leeway ... in reaching outcomes in case-by-case determinations."   *Parker*, 567 U.S. at 48 (punctuation modified). "That leeway increases in assessing a state court's ruling under AEDPA" because the court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was

20

unreasonable."   *Stewart v. Trierweiler*, 867 F.3d 633, 638–639 (6th Cir. 2017)

(punctuation modified).

Petitioner raised these claims on direct appeal.   The Michigan Court of

Appeals considered these claims on plain error review and denied relief.   The court

explained in relevant part:

> With respect to defendant's claims pertaining to questions concerning gang signs allegedly reflected in certain photographs of the assailants and as to underage drinking, defendant has simply failed to establish plain error affecting his substantial rights. Moreover, the trial court instructed the jury that the attorneys' questions were not evidence, and jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235.

> With respect to defendant's claim that the prosecutor impermissibly told the jurors that they would have to justify to him any finding that the eyewitness was not credible, it is clear that the prosecutor was simply emphasizing that the eyewitness was a credible witness and worthy of belief based on the facts and testimony, which is proper argument. *People v. Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

> Defendant next takes issue with the prosecutor's remark that the victim did not deserve what occurred to him and the prosecutor's statement, "If you want to talk about a totally senseless, brutal, unimaginable crime, you would be hard put to come up with something worse than this one." "Appeals to the jury to sympathize with the victim constitute improper argument." *People v. Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). The prosecutor's characterization of the crime was consistent with the evidence. Although poignant, the prosecutor did not ask the jury to convict defendant out of sympathy for the victim. In any event, the trial court instructed, and the prosecutor reiterated, that the

attorneys' statements were not evidence. *See Unger*, 278 Mich App at 235.

Defendant also argues that the prosecutor impermissibly elicited a witness's opinion about another witness's credibility. The prosecution asked defendant why the eyewitness would have lied about what he had witnessed on the night of the incident. Defendant simply responded that he did not know the answer to that question. We fail to see how defendant was prejudiced by this questioning; assuming error, it was harmless.

Defendant next argues that the prosecutor misstated the law regarding the presumption of innocence and accomplice testimony. "A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial," but "if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *People v. Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). Assuming a misstatement of law by the prosecutor, reversal is unnecessary because the trial court specifically and accurately instructed the jury on the presumption of innocence and accomplice testimony, curing any presumed misstatements.

*Martin*, 2015 WL 774488 at *5-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. First, the prosecutor's brief reference to gang or rapper signs (in the photograph of the co-defendants) during opening statements, 10/8/13 Trial Tr., ECF No. 11-7, PageID.231, and his questions to Petitioner about gang signs did not deprive Petitioner of a fair trial given that Petitioner denied being in a gang, 10/9/13 Trial Tr., ECF No. 11-8, PageID.309, and

22

no further mention was made of gang membership. *See, e.g., Toler v. McGinnis*, 23 F. App'x 259, 367-370 (6th Cir. 2001) (prosecutor's implication that petitioner was a Mexican Mafia gang member and his brothers were drug traffickers and suspected murderers did not deprive petitioner of due process and did not warrant federal habeas relief).

Similarly, the prosecutor's references to underage drinking, 10/8/13 Trial Tr., ECF No. 11-7, PageID.230-231, were intended to explain events leading up to the crime and did not harm Petitioner given that both accomplice Demarkus Bowes and Petitioner testified that other people were drinking that day, but Petitioner was not. 10/9/13 Trial Tr., ECF No. 11-8, PageID.284-285, 306.

Second, as to vouching for Huff by asking the jury "why would he lie?", a review of the record indicates that the prosecutor was arguing from the facts that Huff should be believed. 10/10/13 Trial Tr., ECF No. 11-9, PageID.330-331, 336. While it is improper for a prosecutor to express a personal opinion about the credibility of a witness, *United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005), such was not the case here. The prosecutor did not express a personal belief that Huff was being truthful nor imply special knowledge about his credibility or undisclosed evidence of guilt. Rather,

23

the prosecutor suggested from the facts that Huff had no ulterior motive to implicate Petitioner. A prosecutor may argue reasonable inferences from the evidence, *Bates v. Bell*, 402 F.3d 636, 646 (6th Cir. 2005), and may argue from the facts that a witness is or is not worthy of belief. *Portuondo v. Agard*, 529 U.S. 61, 69 (2000). Petitioner fails to show that the prosecutor's argument was improper or that it rendered his trial fundamentally unfair.

Third, as to any claim that the prosecutor's closing argument that the crime was senseless and the victim did not deserve what happened to him, the record indicates that the prosecutor's argument was consistent with the evidence and was made to explain that there was no known motive for the crime. It is well-settled that a prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). A prosecutor improperly invokes the passions and prejudices of the jury when he or she "calls on the jury's emotions and fears – rather than the evidence – to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). The prosecutor in this case did not ask the jury to convict Petitioner based on sympathy for the victim, but rather focused on the evidence and the fact that the assailants had no reason to kill the victim. 10/8/13 Trial Tr., ECF No. 11-7, PageID.233.

24

Moreover, the trial court instructed the jurors on the proper consideration of the evidence and that they should not let sympathy or prejudice influence their decision. 10/10/13 Trial Tr., ECF No. 11-9, PageID.337.   Jurors are presumed to follow the court's instructions.   *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").   Petitioner fails to show that the prosecutor's remarks rendered his trial fundamentally unfair.

Fourth, as to the prosecutor asking Petitioner to comment on Huff's credibility, the record indicates that the prosecutor was likely attempting to further show that Huff and Petitioner did not know each other.   Under Michigan law, it is generally improper for a lay witness to offer an opinion on the credibility of another witness because it is for the jury to determine such matters.   *See, e.g., People v. Peterson*, 450 Mich. 349, 352, 537 N.W.2d 857 (1995); *People v. Buckey*, 424 Mich. 1, 17, 378 N.W.2d 432 (1985).   The Court, however, is not aware of any United States Supreme Court precedent on this issue, and the Sixth Circuit has rejected similar claims from habeas petitioners finding no constitutional violation when a state prosecutor asks a defendant whether a witness is lying.   *See, e.g., Davis v.*

*Burt*, 100 F. App'x 340, 347 (6th Cir. 2004) (prosecutor's conduct in asking defendant whether witnesses were lying or mistaken was not so egregious as to warrant habeas relief).   In any event, when the prosecutor asked Petitioner why Huff would lie and implicate him in this case, Petitioner replied that he did not know. 10/9/13 Trial Tr., ECF No. 11-8, PageID.310.   Even assuming that the prosecutor erred, Petitioner fails to show that he was prejudiced by such conduct.   *See, e.g., Knapp v. White*, 296 F. Supp. 2d 766, 778-779 (E.D. Mich. 2003) (ruling that petitioner failed to show how he was harmed by the prosecutor's question seeking comment on the credibility of a prosecution witness).

Fifth, as to the prosecutor's alleged misstatements of the law on the presumption of innocence and accomplice testimony during opening statements and/or jury voir dire, the record reveals that the trial court properly instructed the jury on the presumption of innocence and the consideration of accomplice testimony. 10/10/13 Trial Tr., ECF No. 11-9, PageID.338-340.   Thus, even if the prosecutor erred, the trial court's instructions on: (1) the presumption of innocence, (2) accomplice testimony, (3) the proper consideration of the evidence, (4) that the jurors should decide the case based on the evidence at trial, and (5) that the lawyers' statements and arguments are not evidence, cured any potential prejudice to

26

Petitioner. *See Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003). As discussed, jurors are presumed to follow the court's instructions. *Penry*, 532 U.S. at 799; *Powell*, 469 U.S. at 66. Petitioner fails to establish that the prosecutor's conduct rendered his trial fundamentally unfair.

Lastly, as to the cumulative effect of any alleged errors, Petitioner is not entitled to relief. The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Additionally, the Sixth Circuit has ruled that such a cumulative error claim is not cognizable on habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was not cognizable and citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010), and *Moore*). Petitioner fails to state a claim upon which relief may be granted as to this issue. Moreover, given that the individual claims lack merit, Petitioner cannot establish that he is entitled to relief based on cumulative error. Habeas relief is not warranted.

### 3. Ineffective Assistance of Trial Counsel Claims

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct, for failing to object to the pre-trial photographic identification procedure, and for failing to call his brother Kenneth Reed to testify for the defense at trial.   Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.   First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.   *Strickland*, 466 U.S. at 687.   Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.   Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.   *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."   *Id*. at 690.   The reviewing court's scrutiny of counsel's performance is highly deferential.   *Id*. at

28

689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end

29

citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard." *Id*.

Petitioner first asserts that trial counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct and the allegedly improper pre-trial photographic identification procedure. He raised the claims on direct appeal. The Michigan Court of Appeals denied relief, ruling that Petitioner failed to show that trial counsel was ineffective because the underlying claims lacked merit. *Martin*, 2015 WL 774488 at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the state court's and this Court's determinations that the underlying claims lack merit, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Moreover, even if counsel erred by not objecting to certain errors by the prosecutor, Petitioner cannot establish that he was prejudiced

30

by counsel's conduct because any such errors were harmless due to the significant evidence of guilt presented at trial. Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard.

Petitioner also asserts that trial counsel was ineffective for failing to call his brother Kenneth Reed to testify at trial. He attaches an affidavit from Reed to his petition in which Reed states that he was sitting in the car at the crime scene and that Petitioner "did nothing but yell at the others to stop." Reed also states that he spoke with counsel about testifying at trial, and counsel said he was going to call him to testify, but did not do so. ECF No. 1, PageID.42.

Petitioner raised this claim in his motion for relief from judgment on state collateral review. The state trial court applied the *Strickland* standard and denied relief. The court explained in relevant part:

> The Defendant first suggests that his trial attorney failed to investigate Reed's possible testimony as a witness. However, the record reflects that trial counsel was fully acquainted with who Reed was, and that he had already been interviewed by the police and had denied being present at the scene of the crime. The record demonstrates that Defendant's trial attorney was present at the preliminary examination when the prosecutor elicited testimony from investigating Detective Matthew Gerow, who explained that co-defendant Elmer Curry had told him the photos on his iPhone had been taken by Kenneth Reed. (PET, 100). During his own cross-examination of the detective, trial counsel himself asked questions about Reed being a suspect. (PET, 104). He was also present when Detective Gerow testified that Reed had been interviewed by Detective Olivo and Detective Sergeant

Longuski and had denied being present (PET, 107-108). Finally, the record also shows that a copy of that interview between Reed and the police had been provided to all the defense attorneys. (PET, 108). Therefore, it is clear that trial counsel knew exactly who Reed was, that his potential knowledge of the events in question has already been investigated, and was actually in possession [of] a copy of his police interview where he said he was not present.

Nevertheless, Defendant now offers an affidavit from Reed that, at some point, he approached trial counsel and gave him a different story [than] what he had told the police. Notwithstanding those earlier statement[s], Reed now avers that he told his brother's attorney that he was present at the time of the incident and that he had not seen his brother do anything but try to break up the fight. Assuming arguendo that this conversation actually took place, and trial counsel was informed that Reed was offering to say these things at his brother's trial, any decision not to call him to the stand was professionally reasonable as a matter of trial strategy.

At best, the presentation of Reed's testimony would have been merely cumulative where Defendant had already testified denying his participation in the assault and claiming he was merely trying to "break it up" and "[t]elling them stop."[4] (TT III, 117-118)). On the other hand, even if Reed testified consistent with Defendant's story, he would have been promptly impeached by the prosecutor with his prior police interview claiming he was not present. As such, Reed would be immediately revealed to be a person who has, or is, engaged in a course of lying about what actually happened that night—either to the police then or to the jury now. The jury would also have learned of his relationship to the Defendant, as his brother, which provides an obvious

_____

[4] Moreover, Reed's actual availability as a witness at the trial is entirely speculative. Reed was not, and has not, been charged in this matter. Should he have decided to change his story, and testify under oath as to his presence with the others, he could have incriminated himself as either an aider and abettor, principal, or accessory after the fact. As such, the Court would have advised him of his Fifth Amendment rights and appointed an attorney to provide counsel to Reed in order to make an informed decision as to whether he wanted to testify and expose himself to criminal liability. Therefore, even if trial counsel had attempted to call him as a witness, Reed may well have ultimately decided not to testify.

source of bias. Therefore, trial counsel could have reasonably concluded that calling Reed to testify would not only not help his client's case, but actually inflict significant damage to the defense in the eyes of the jury—by presenting testimony from a person, with a clear source of bias, who would seem to have just concocted a new story for [his] brother's trial. Trial counsel cannot be shown to have been ineffective where the negatives of presenting the suspect testimony of the Defendant's brother, Kenneth Reed, appear to outweigh any potential positives. Consequently, even accepting the facts as set forth in the Reed affidavit, trial counsel cannot be said to have acted ineffective and no relief is warranted.

\*\*\*

Finally, even if the Court were to take its analysis one step further, by assuming that trial counsel could somehow be found to have acted ineffectively in not calling Reed to the stand, Defendant is still not entitled to any relief from judgment where he cannot show he was actually prejudiced by that inaction. As noted above, actual prejudice in this context generally requires the Defendant to prove that, but for the alleged error in not calling Reed, he "would have had a reasonably likely chance of acquittal." MCR 6.508(D)(3)(b)(i). However, it cannot be said that Reed's purported testimony creates any reasonable probability of a different result at trial.

First, as discussed above, the evidence would only have been cumulative as Defendant himself took the stand and testified to his story that he did anything except to try to break up the attack. (TT III, 117-118). The jury had full opportunity to weigh and consider Defendant's testimony in light of all the other evidence in the case and clearly rejected it. That evidence included, but was not limited to, eyewitness testimony from Mikell Huff, in front of whose home the fatal beating happened to take place, and Defendant's cousin and co-defendant Demarkus Bowes. Both of those witnesses testified as to the considerable length of time of the attack. Bowes estimated that the four were beating the victim for two to three minutes, while Huff estimated that a minute "give or take ten seconds" passed from the time he first heard the commotion from within his house until they took flight. (TT III, 51; TT II, 45).

Even though the attack took place over this prolonged period of time, and contrary to any claim by the Defendant that he was out there trying to stop it, Bowes testified that he had no memory of anyone saying not to do this. (TT III, 47, 90). Not only did Huff also not witness Defendant acting to break up the fight, he saw Defendant directly participate in the attack. He immediately saw that "all four were hitting and kicking when [he] stepped out" on his porch. (TT II, 40). He had substantial opportunity to take in what was happening as he was ignored for some 15-20 seconds after he came out onto the porch. (TT II, 39). He saw "each and every one" of the four strike the victim, identified the Defendant as one of the assailants, and recalled seeing the Defendant, specifically, kicking the victim in the torso. (TT II, 42, 74). After Huff yelled at the attackers, he saw the Defendant and another continue the assault, and heard the Defendant declare to his friends that, "I'm robbing him now." (TT II, 41-42). Two days later, he picked Defendant out of a photo array, in addition to identifying him in court at the time of trial. (TT II, 64, 42). He told the jury he had "no doubt at all" in his mind that he saw the Defendant that night. (TT II, 42).

In light of his testimony, from both a co-defendant and neutral third-party, there is no reasonable probability that the addition of testimony from Defendant's brother into the mix would have resulted in an acquittal. As discussed above, had Reed testified in an effort to corroborate his brother's testimony, he would have been impeached with his own prior statements that he was not present. His relationship to the Defendant, as his brother, would also have been revealed as an obvious source of bias, and his changing story for his brother instead had a reasonable probability of casting doubt on the credibility of the defense. Given that the jury's verdict reflects a determination that they found Huff's testimony credible, and rejected Defendant's self-serving story of having done nothing except fruitlessly endeavor to curtail the wayward behavior of his friends, there is no sound reason to believe that evidence of his brother's newly changed story, to one beneficial to the Defendant's interests, would cause them to acquit the Defendant. No relief from judgment is warranted where Reed's testimony would not create a reasonably likely chance of an acquittal.

*Martin*, No. 13-038567-FC at *7-11 (footnote in original); ECF No. 11-19, PageID.834-838.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary.  *Wiggins*, 539 U.S. at 522-523; *Strickland*, 466 U.S. at 691; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning ... guilt or innocence."  *Towns*, 395 F.3d at 258.  Decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy.  When making strategic decisions, counsel's conduct must be reasonable.  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-523.  The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

35

In this case, trial counsel was clearly aware of Kenneth Reed, knew that he was Petitioner's brother, knew that Reed had taken a picture of the men involved in the crime earlier that day, and knew that he had denied being at the scene of the crime when interviewed by police.   Given such circumstances, trial counsel may have decided not to call Reed to testify due to concerns about his familial relationship with Petitioner, his prior statements to police, and his overall credibility. Such concerns were reasonable.   *See, e.g., Stadler v. Berghuis*, 483 F. App'x 173, 176-177 (6th Cir. 2012) (counsel's decision not to pursue an alibi defense was reasonable given concerns about family members' credibility); *see also Moore v. Parker*, 425 F.3d 250, 253-254 (6th Cir. 2005) (counsel was not ineffective for failing to call family members as witnesses where they could not provide an airtight alibi).   The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.   *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Moreover, Petitioner was not deprived of a meaningful defense because he testified at trial and was able to present his defense that he was merely present during the beating and tried to stop it.   Petitioner fails to show that counsel was ineffective

36

under the *Strickland* standard, or that he was deprived of his right to present a meaningful defense. Habeas relief is not warranted on these claims.

### 4. Pre-Trial Identification Procedure Claim

Petitioner next asserts that he is entitled to habeas relief because the pre-trial photographic identification procedure used by the police was unduly suggestive. Respondent contends that this claim is untimely and that it lacks merit.

Due process protects a defendant against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). Due process thus requires the suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

A pretrial identification procedure violates due process when: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-198 (1972); *Manson*, 432 U.S. at 99 (due process challenges to identification procedures are reviewed using the *Biggers* test). The evil to be avoided is that an initial improper identification procedure will unduly

influence later investigation and result in misidentification at trial.   *United States v. Wade*, 388 U.S. 218, 229 (1967).

A criminal defendant has the initial burden of proving that an identification procedure was impermissibly suggestive.   It is only after a defendant meets that burden that a court must require the State to prove that the identification was reliable, independent of the suggestive identification procedure.   *Id*. at 240 n. 31.   If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.   As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification.   *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner raised this claim on direct appeal.   The Michigan Court of Appeals denied relief finding that the photographic array procedure was not unduly suggestive.   The court explained:

> "A photographic identification procedure or lineup violates due process guarantees when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *People v. McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013).

> Here, the eyewitness initially testified that he was shown two photographic lineups, one with two individuals and one with six

individuals. He then testified that defendant, whom he had identified, was the only individual common to both. It is conceivable that this, in and of itself, would have been impermissibly suggestive. However, the eyewitness later testified that he was actually shown only one lineup with six individuals and saw the other depiction later that evening on television. Further, he was only told that an assailant "may" be in the lineup. There is nothing to indicate that such identification was impermissibly suggestive.

*Martin*, 2015 WL 774488 at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   As explained by the state court, Petitioner's claim is belied by the record.   The eyewitness ultimately testified that the police only showed him one "six-pack" of photographs and told him that the perpetrator "may" be in the array.   Such a procedure was neither improper nor unduly suggestive.   The fact that the eyewitness may have also seen a photograph of Petitioner on the news does not affect the constitutionality of the pre-trial identification procedure or the in-court identification.   Petitioner fails to establish a constitutional violation.   Habeas relief is not warranted on this claim.

### 5.    Claim involving Demarkus Bowes' Affidavit

Petitioner attaches an affidavit from testifying accomplice DeMarkus Bowes dated in 2016 to his habeas petition, ECF No. 1, PageID.43, but does not clearly

indicate which claim this affidavit is intended to support.   Respondent contends

that this claim lacks merit.

A federal court holds pro se pleadings to "less stringent standards than formal

pleadings drafted by lawyers."   *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Even with a pro se party, however, a court "should not have to guess at the nature of

the claim asserted."   *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir.

2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).   Courts "may

not rewrite a complaint to include claims that were never presented ... nor may courts

construct [a petitioner's] legal arguments for him[.]"   *Townsend v. Guidance Ctr.*,

No. 2:23-CV-11188, 2023 WL 10229059, *3 (E.D. Mich. Sept. 25, 2023), R & R

adopted, 2024 WL 998833 (E.D. Mich. Feb. 20, 2024).   Petitioner fails to

sufficiently explain the basis for a claim involving Bowes' affidavit.   He is thus not

entitled to habeas relief on such a basis.

Nonetheless, the Court notes that Petitioner presented Bowes' affidavit to the

state trial court in his motion for relief from judgment on collateral review as a

newly-discovered evidence claim.   The trial court denied relief on that claim

essentially rejecting the affidavit.   The court explained:

> The Defendant also attaches, as alleged newly discovered evidence, and
> [sic] affidavit from his cousin and co-defendant, Demarkus Bowes,
> which he claims demonstrates that Bowes is now "recanting anything

he may have said incriminating toward the Defendant." While evidence that a witness has recently decided to recant trial testimony would qualify as newly discovered evidence, no such evidence actually exists. The affidavit of Bowes does not offer any newly discovered evidence of that nature, as it does not disavow even a single statement that he made at trial. Rather, his affidavit instead complains about vague and unspecified statements allegedly made by the investigating officer. He avers, in pertinent part:

> 3) That during trial, the investigating office [sic] fabricated my statements as to what role Co-Defendant Daquavis Martin played in the incident.
>
> That I wanted to take the stand to dispute the testimony of this officer as to relate to Co-Defendant Martin, however, I would have given up an opportunity to incriminate myself.
>
> 4) That due to the recorded interview, the Prosecutor had reason to know that the investigating officer was using his own words about what this Affiant said about Co-Defendant Martin.

Not only do these statements not recant anything Bowes said at trial, but the affidavit's author apparently did not even know Bowes had testified at trial as it purports to wistfully lament how he desired to testify at trial but simply could not do so for fear of exposing himself to criminal liability. As is apparent from the record, Bowes not only took the stand at trial, but did so as part of an earlier plea deal. In other words, he was far past the stage of worrying about incriminating himself—he had admitted his guilt and been convicted of second-degree murder by plea. Moreover, his testimony was incriminating as he testified about his participation in the murder, including how he delivered "body shots" to the victim with his fists during the fatal beating. (TT. III, 41).

In any event, assuming arguendo that the proffered affidavit was actually signed by Bowes, further review demonstrates that the

substance of his affidavit does not make a lick of sense. As noted above, the subject of his affidavit concerns his claims of "fabricated" testimony of the investigating officer, which, in this case, would be Detective Gerow. However, Bowes had no opportunity to witness the testimony of Detective Gerow, as he was in jail as a result of his own murder conviction. He thus had no opportunity to witness Gerow's testimony where he was brought into the courtroom to testify and then taken right back to jail.

Moreover, neither the affidavit or the accompanying briefing make any effort to identify any of these supposedly fabricated statements by Det. Gerow where he claimed to relay to the jury what Bowes had told him about Martin's involvement. However, a review of Det. Gerow's testimony at trial fails to demonstrate a single instance where he purported to offer [testimony] as to what Bowes had said Martin had done, the lack of any attempt to identify support for the averments of "fabricated" statements is, perhaps, not surprising. Consequently, the affidavit not only fails to substantiate the claim of recently "recanted" testimony, it also appears to make claims against the police and prosecutor that lack any basis in fact. Therefore, Defendant has failed to establish the Bowes affidavit warrants any relief from judgment, and none will be granted.

*Martin*, No. 13-038567-FC at *11); ECF No. 11-19, PageID.838-840.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Claims of actual innocence based on newly-discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Federal habeas courts "sit to ensure that individuals are not

42

imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. The Supreme Court has not decided whether freestanding actual innocence claims are cognizable on habeas review. *See House v. Bell*, 547 U.S. 518, 555 (2006) (declining to resolve the issue). The Sixth Circuit, however, has "repeatedly indicated that such claims are not cognizable" on habeas review. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (listing cases)). This Court is bound by the Sixth Circuit's ruling. Petitioner fails to state a claim upon which relief may be granted as to this issue.

Furthermore, as discussed by the trial court, Bowes' affidavit is questionable as it does not acknowledge that he, in fact, testified at trial after pleading guilty to second-degree murder (such that there was no incrimination concern), that he implicated Petitioner in the beating and specifically testified that no one was standing back telling them to stop. Bowes also fails to recognize that he was not present in the courtroom when the detective testified.

Additionally, to the extent that Bowes attempts to recant his testimony by claiming that he never saw Petitioner "do anything outside of attempting to break up the fighting," ECF No. 1, PageID.43, it is inherently suspect. Affidavits by witnesses recanting their trial testimony are viewed with extreme suspicion. *See McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007); *United States v. Willis*, 257

F.3d 636, 645 (6th Cir. 2001). The affidavit from Bowes, who is Petitioner's cousin, signed more than two years after the trial is suspect and unreliable. *See, e.g., Schlup v. Delo*, 513 U.S. 298, 331 (1995); *Herrera*, 506 U.S. at 423 (such statements are viewed with "a fair degree of skepticism.") (O'Connor, J., concurring); *Freeman v. Trombley*, 483 F. App'x 51, 59-60 (6th Cir. 2012) (discounting credibility of girlfriend's alibi affidavit submitted long after trial); *Harris v. Smith*, No. 2:12-CV-14210, 2013 WL 3873168, *5 (E.D. Mich. July 25, 2013) ("Long delayed statements are viewed with extreme suspicion."); *see also McQuiggan v. Perkins*, 569 U.S. 383, 387 (2013) (a court should consider "unjustifiable delay on a habeas petitioner's part ... as a factor in determining whether actual innocence has been reliably shown"). Petitioner fails to establish that he is entitled to relief based on Bowes' affidavit.

### 6. Discovery Claim

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the state trial court's denial of his discovery requests. Respondent contends that this claim is not cognizable on habeas review and that it lacks merit.

To the extent that Petitioner alleges a violation of Michigan discovery rules, he is not entitled to relief. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a). Trial court errors in the application of state procedure or evidentiary law are not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). A claim alleging a violation of state discovery rules does not provide a basis for federal habeas relief. *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Moreover, there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). Petitioner thus fails to state a claim upon which habeas relief may be granted as to any alleged failure to provide him with discovery.

A prosecutor's failure to disclose favorable defense evidence, however, constitutes a denial of due process when the evidence "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To find a *Brady* violation, not only must the evidence be suppressed it must be material and favorable to the defense. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material

"if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."   *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-436 (1995).   Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce."   *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993).   The duty to disclose favorable evidence includes the duty to disclose impeachment evidence.   *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-155 (1972).

Thus, to establish a *Brady* violation, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of guilt.   *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).   A petitioner has the burden of proving a *Brady* violation.   *Id*.

Petitioner does not allege any facts which show that the prosecution failed to disclose favorable or exculpatory material evidence.   Conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335-336 (6th Cir. 2012) (citing *Workman* and denying habeas relief); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and

conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).   Habeas relief is not warranted on this claim.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.   Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.   *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).   A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000).   Petitioner makes no such showing.   Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.   *See* Fed. R. App. P. 24(a).   Accordingly, the Court **DENIES**

Petitioner leave to proceed in forma pauperis on appeal.   This case is closed.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 30, 2026

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 30, 2026, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager

48